# EXHIBIT A

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**08/28/2017** at 03:51:39 PM

Clerk of the Superior Court
By Nidia Reyes,Deputy Clerk

LAW OFFICES OF
THOMAS M. DIACHENKO, APC
ATTORNEYS AT LAW
1916 Third Avenue
San Diego, California 92101
(619) 699-5870

Thomas M. Diachenko, Esq. (State Bar No. 140763)
Arcelia N. Magaña, Esq. (State Bar No. 312422)

Attorneys for Plaintiffs

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN DIEGO – CENTRAL BRANCH

| | |
|---|---|
| JANDY QUISMUNDO, an individual, on behalf of herself and all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>TRIDENT SOCIETY, INC. d/b/a TRIDENT SOCIETY, a California Corporation; NEPTUNE SOCIETY OF AMERICA, INC. dba NEPTUNE SOCIETY, a Corporation; NEPTUNE MANAGEMENT CORP. dba NEPTUNE MANAGEMENT, a Corporation; SCI DIRECT, INC., a Corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 37-2017-00031825-CU-OE-CTL<br><br>**COMPLAINT**<br>1. **MISCLASSIFICATION**<br>2. **FAILURE TO INDEMNIFY**<br>3. **FAILURE TO PAY WAGES**<br>4. **WAITING TIME PENALTIES**<br>5. **PAYSTUB VIOLATIONS**<br>6. **TIME RECORD VIOLATIONS**<br>7. **UNFAIR BUSINESS PRACTICES**<br>8. **FAILURE TO PROVIDE SICK LEAVE** |

Plaintiff JANDY QUISMUNDO (also referred to as "Plaintiff" or "QUISMUNDO"), by and through their attorneys of record, bring this class action (to include other similarly situated employees referred to as "Class Members" or "ISRs") against Defendants, and allege as follows:

///

1
**CLASS ACTION COMPLAINT**

# JURISDICTION, VENUE & DEFENDANTS

1. This action arises out of acts, representations, and events occurring within the jurisdiction of the County and City of San Diego and throughout the State of California.

2. Defendant TRIDENT SOCIETY, INC. dba TRIDENT SOCIETY (hereinafter referred to as "TRIDENT" or one of the "Defendants") is a California corporation with California Corporate Number C2033057, who, at all times mentioned herein, was a business organized and existing under the laws of the State of California, which has designated California as its state of jurisdiction, and which operates its business in California, including an office on 9242 Miramar Road, Suite 37, San Diego, California, 92126, where QUISMUNDO was jointly employed by Defendants. Therefore, jurisdiction and venue are properly with this court.

3. Defendant NEPTUNE SOCIETY OF AMERICA, INC. doing business as ("dba") NEPTUNE SOCIETY (hereinafter also referred to as "NEPTUNE SOCIETY" or one of the "Defendants") is a corporation with its headquarters located at 1929 Allen Parkway, Houston, Texas, 99019, but which also conducts and is licensed to do business in California, having a California Corporate Number of C2043555, and a designated agent for service of process in California, who employed QUISMUNDO at 9242 Miramar Road, Suite 37, San Diego, California, 92126.

4. Defendant NEPTUNE MANAGEMENT CORP., doing business as (dba) NEPTUNE MANAGEMENT (hereinafter "NEPTUNE MANAGEMENT" or one of the "Defendants") is a corporation with its headquarters located at 1250 South Pine Island Road, Suite 500, Plantation, Florida, 33324, but which is also conducts and is licensed to do business in California, having a California Corporate Number of C1591024, and who employed QUISMUNDO at 9242 Miramar Road, Suite 37, San Diego, California, 92126, and which has designated an agent for service of process in California.

5. SCI DIRECT, INC., (hereinafter also referred to as "SCI" or as one of the "Defendants") is a corporation which conducts and is licensed to conduct business in California, registered with California Secretary of State, with California Corporate Number

C2471348, and has various business offices located in California, including one located on 9242 Miramar Road, Suite 37, San Diego, California, 92126, where QUISMUNDO was employed by Defendants.

6.  TRIDENT, NEPTUNE SOCIETY, NEPTUNE MANAGEMENT, and SCI are also jointly referred to as "Defendants" throughout this Complaint.

7.  The true names and capacities of Defendants sued under Section 474 of the California Code of Civil Procedure as DOES 1 through 20, inclusive, and each of them, are unknown to Plaintiff who therefore sues these Defendants by fictitious names. Plaintiff will seek to amend this complaint to set forth the true names and capacities of the fictitiously named Defendants when the true names and capacities of these fictitiously named Defendants have been fully ascertained. Plaintiff is informed and believes and thereon alleges, that each of the fictitiously named Defendants are responsible in some manner for the events and occurrences alleged by Plaintiff, and Plaintiff's damages were directly and proximately caused by the conduct, acts and omissions of these Defendants.

## GENERAL ALLEGATIONS

8.  The public policy of California declares the following:

It is the public policy of this state to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions or for employers that have not secured the payment of compensation and to protect employers who comply with the law from those who attempt to gain a competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

(Labor Code §90.5 subd. (a).)

9.  Despite this clear mandate, Defendants intentionally and knowingly violated numerous statutes contained within the California Labor Code and the Industrial Welfare Commission ("IWC") Wage Orders. Defendants willfully chose to put profit ahead of legality providing the citizens of this great State of California that to which they were legally entitled, as well as engaged in a scheme to deprive the State of California and the Federal Government of revenue derived from taxable income, thereby engaging in tax evasion and fraud. This scheme

was undertaken to maximize profits and allowed for perverse amounts of income to flow to managers, executives, and primary shareholders of Defendants. Defendants have and continue to willfully misclassify QUISMUNDO, an Independent Sales Representatives" ("ISRs"), and other ISRs as independent contractors rather than employees in numerous respects, all of which are based upon controlling how, when, and where they should perform their duties.

10. Defendants required all ISRs to fill out an application, which was to be submitted to humanresources@neptunesociety.com, before they were "hired". Before the ISRs became "eligible to sell", they were also required to do the following: authorize and undergo a "Background Check"; sign an "Independent Sales Contractor Agreement" along with "Exhibit A"; sign a "Minimum Ethical Standards For Independent Sales Representative" form; sign a "Proprietary and Confidential Information Agreement"; complete and sign a "Direct Deposit Form with Voided Check" form for "payroll", and; provide "Proof of Car Insurance & copy of Driver's License". A checklist had to be complete by Defendants' office manager to ensure that the new ISR had satisfied these conditions of employment. The ISRs were then "Entered in Payroll".

11. In the SCI Security Form, the ISRs were: assigned an "Employee ID" number; assigned a "Neptune/Trident E-mail Address" with their first initial and last name as a prefix, and; assigned a "Supervisor" (a "Sales Manager" employed by the Defendants). All of this had to be approved by the VP of Human Resources SCI, Dania Schoolfield. The "Direct Deposit Form with Voided Check" form, filled out by the ISRs with "Neptune-Trident Society" on the top of the page also stated that it had, "[t]o be completed by Employee", required the ISRs to write in their name on a blank line which was proceeded by the words "Employee Name" and then required the ISRs to sign their name on a signature line just above the title "Employee Signature". The form then instructed, "Return to HR".

12. After the ISRs were/are "hired", they are required to undergo mandatory training by their "supervisor", who is the "Sales Manager", without receiving any compensation. The ISRs are told how to sell, when to sell, and where to sell. The supervising Sales Manager gives them a script which they are mandated to follow verbatim and recite to the Sales Manager on cue.

The Defendants require the ISRs to work "floor hours" which the Sales Managers dictate. The Sales Manager orders the ISRs that they "are supposed to be in the office at 930 am on your floor day to EOB [End of Business-day]". Defendants told the ISRs how many hours they should be working. The Sales Manager told the ISRs they have to work on weekends. The Sales Manager told the ISRs they cannot have another job while working for Defendants. The Defendants told the ISRs they are required to make telemarketing calls even to individuals on "no-call" lists. The ISRs are required to attend meetings and conduct seminars. Unless the ISRs make a commission on a sale, all the time required of them under the direction and control of the Defendants has gone and continues to go uncompensated. Despite warnings from the Human Resources department that such practices create legal exposure, Defendants have continued this practice of placing profits over the law.

13. Illustrative of the level of control exerted by Defendants over the ISRs, the San Diego and Rancho Mirage Sales Manager, Guy Allen, would tell ISRs: to "shut up"; that they had to "obey" him; that they had to follow his sales pitch verbatim when making sales calls; that they were required to take pictures of homes they were told to go to in making their assigned sales calls; to mockingly cheer for less productive ISRs at meetings they were required to attend; they would be "starved out" (not given enough leads to survive financially) if they did not follow his instructions; they had to use the scheduling print-outs he created; and that they were required to meet with him behind closed doors and told they could only leave when he told them they could, etc.

14. The only way the ISRs could earn income was buy selling the services and products offered by the Defendants. The ISRs would have to travel to potential customers' homes after they were given sales leads. The quality of the sales leads varied. Some customers were easier to sell then others. The Defendants controlled both the quality and quantity of leads which the ISRs were given. Defendants would "cap" (limit) the amount of sales ISRs could make. The ISRs would sometimes travel to potential customers' homes only to discover that they had been provided with the wrong address, and were not compensated or indemnified for the costs of having to travel there. Defendants also "paid" ISRs by providing them a "credit card" instead of

1  pay check for certain pay periods which had certain restrictions and limitations.

2  15.  ISRs were promised bonuses which they would earn but Defendants would fail to pay them. The Defendants would manipulate when the sales would post so as to deny ISRs sales bonuses for that pay period which they would have otherwise earned but for the manipulation by Defendants.

16.  Defendants also failed to indemnify the ISRs for all necessary expenditures and losses incurred in direct consequence of the discharge of their required duties performed for Defendants' benefit. This included, but was not limited to, use of and payment for their personal vehicles to make sales calls, use and payment for their home to use as an inside sales office, use of and payment for phones, computers, copiers, scanners, office furniture, office supplies, internet services, phone service providers along with other purchases to perform their duties for the benefit of the Defendants. Defendants required ISRs to pay various third parties for sales leads. Defendants were fully aware of this practice throughout the time of this claim. As noted above, the Human Resources expressed concerned that this practice was illegal and could create legal exposure for the Defendants.

17.  Defendants knew that Guy Allen, their employee for whom they were vicariously liable for and with whom they acted in complicity, entered into an agreement with Jean Strimike (aka Barbara Jean, Debra Jean, and Jean Hamilton and hereinafter simply referred to as "Jean"), Ryan Hoffman, Julie Harlan and Jennifer Turk, among others (collectively referred to as "Appointment Setters") to make calls from a Velocity 360 account with the intention of booking sales appointments. These Appointment Setters determined the time the ISRs would make their sales calls which the Appointment Setters would, at their discretion set for as late as 8:30 at night.

18.  Defendants were fully aware of the fact that the Sales Manager had complete discretion as to the quality and quantity of the sales leads he would assign to the ISRs. Defendants then required the ISRs to text their Sales Manager with a list of all sales calls and were told what appointments they were to conduct (in addition to be instructed as to exactly how to conduct them and exactly what to say as explained above). For example, Defendants required the ISRs to Jean $30-$40 per sale. For a period of time within the claim period, Defendants also

required ISRs to pay for appointments set by the Appointment Setters even if a sale was not made. For a period of time within the claim period, the ISRs were required to pay the Sales Manager for the appointments scheduled by the Appointment Setters. Defendants also required the ISRs to pay the Appointment Setters, periodic "bonuses" at the command of the Sales Manager including direct deposits into the Appointment Setters' bank accounts. The Sales manager told the ISRs that if they required Jean to pay taxes she would quit and they would not receive any sales appointments. Defendants required the ISRs to pay the Appointment Setters "under the table" (without reporting the payment to the Federal and State tax authorities). These illegal pay practices sanctioned by Defendants not only deprived the ISRs of the benefit of 7.65% employer contribution to their social security and Medicare benefits but also deprived the Federal government and the state of California tax revenue. As such, Defendants were complicit in this fraudulent form of tax evasion.

19.     Defendants knowingly and willfully engaged in direct violations of California state labor law but chose to continue these illicit pay practices in order to avoid their legal obligations of paying employer taxes (FICA or Social Security and Medicare contribution of 7.65% of the ISRs' gross earnings), workers compensation benefits, sick pay benefits, unemployment insurance, minimum wages for required training time and meetings, and indemnification for business related expenses. Defendants also failed to provide the ISRs paid sick time. Defendants also knowingly and willfully failed to pay ISRs, who separated employment, all their wages owed at the time of separation. Finally, Defendants failed to maintain time records for the ISRs for the pay periods in which they were no-exempt and failed to provide proper paystubs.

20.     Defendants controlled the work the ISRs would receive. Defendants controlled the method, the times, and the locations of the sales calls they made. The ISRs engaged in the business of selling cremation services which was the business of the Defendants. The ISRs did not engage in business (for which they were supposed to be compensated by Defendants) which was in any way distinct from that of the Defendants. The type of business the ISRs were employed to perform on behalf of the Defendants was the regular business of the Defendants,

1   namely, pre-need cremation services and the products which come with said services. The ISRs
2   were not allowed to sell until they satisfied the pre-employment requirements set forth above and
3   underwent mandatory training to obtain the needed skills to perform their job duties. As such,
4   they did not require a specific skill set, a college degree or a professional license prior to hire.
5   The duties performed by the ISRs were performed under the direction and control of their
6   assigned supervising Sales Manager. The amount of the ISRs earnings was controlled by the
7   Defendants and would vary pay period to pay period. The ISRs worked for periods of years and
8   their employment was not for a defined time- period. The Defendants paid the ISRs through a
9   payroll company (ADP) as they would with any employee by defined pay periods, pay dates and
10  with paystubs. The Defendants did not pay the ISRs by the job but rather on a pre-set
11  commission (or piece) rate which the Defendants establish along with bonuses which Defendants
12  would sometimes promise but not pay and also would manipulate so as to deprive certain ISRs
13  the bonuses earned. The ISRs did not typically have their own business through which they
14  performed services for the Defendants but rather were individuals. The ISRs were not free to
15  make decisions which could determine their pay. Rather, Defendants establish a flat amount of
16  "commission" they paid to the ISRs. Their Sales Manager received approximately $60 per
17  contract sold by the ISRs that Sales Manager would supervise plus a salary and periodic bonuses
18  based upon the amount of sales made by the ISRs who were under the direction and control of
19  the Sales Manager. The ISRs raised concerns about their classification, and as noted above, the
20  Defendants Human Resources department expressed the same concerns to the executives
21  employed by the Defendants that the ISRs were misclassified. However, those concerns were
22  ignored and went uncorrected.
23          21.     The California Labor Code requires corporations to properly classify their workers
24  as employees when they treat them as employees under the law and not simply because they call
25  them independent contractor or have them sign a contract that classifies them as independent
26  contractors. The California Labor Code requires employers to indemnify their employees for
27  work relate expenses incurred in the discharge of their duties, maintain time records for their time
28  worked for which they could not generate sales, pay their employees at least the minimum wage

for all hours worked, record hours they were required to work in which they could not make sales during that time, pay their employees the commissions and bonuses as promised once earned, to accurately disclose on their employees' paystubs the hours worked and the applicable wages for those hours, and to pay all wages due to an employee upon separation of employment. In so doing, Defendants engaged in unlawful, fraudulent and unfair business practices under California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200 *et. seq.*

22. Class Representative Plaintiff, QUISMUNDO, brings this class action on behalf of all similarly situated employees (ISRs/Class Members) based on violations of the Labor Code, applicable Wage Orders, the UCL, the Business & Professions Code and California caselaw, among other legal provisions, and seeks damages, including unpaid wages, unpaid waiting time penalties, unpaid sick time, damages for paystub violations, time record violations, penalties, interest, restitution, injunctive relief, associated costs, including attorney fees.

23. All of the below Causes of Action are pled against all Defendants as the joint employers of the Plaintiff QUISMUNDO and all ISRs who are similarly situated based upon company-wide policies and practices for all ISRs (employees) throughout the state of California for the applicable time periods allowed under the law. The below Causes of Action are pled by Plaintiff QUISMUNDO, individually and on behalf all similarly situated employee/ISRs/Class Members.

### FIRST CAUSE OF ACTION
### (Willful Misclassification)

24. Plaintiff, individually on behalf of all ISRs (Class Members) re-alleges and incorporates herein by reference all paragraphs outside this section as though fully set forth herein as it applies to all Defendants.

25. California Labor Code Section 226.8 states that "[it is unlawful for any person or employer to engage in"...: (1) "[w]illful misclassification of an individual as an independent contractor"...; (2) "[c]harging an individual who has been willfully misclassified as an independent contractor a fee, or making any deductions from compensation, for any purpose, including for goods, materials, space rental, services, government licenses, repairs, equipment

maintenance, or fines arising from the individual's employment where any of the acts described in this paragraph would have violated the law if the individual had not been misclassified". In addition, Labor Code section 2804 states that "[a]ny contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee or his personal representative of any right or remedy to which he is entitled under the laws of this State." Thus, any contract Defendants assert to allege the status of Plaintiff and other aggrieved employees is null and void as a matter of law.

26. As set forth in the GENERAL ALLEGATIONS, Defendants knowingly and willfully misclassified all the ISRs as independent contractors instead of as employees, and as such, are entitled to recovery of civil penalties as enumerated in Labor Code §226.8 (b) and (c). Due to the knowing and willful pattern and practice of the Defendants misclassification scheme to maximize profits and exert ultimate control of the ISRs, the Defendants should pay the maximum penalty of $25,000 per violation in addition to any other penalties allowed by law. Defendants practice in this regard is to be considered a misdemeanor pursuant to Labor Code section 225.

## SECOND CAUSE OF ACTION

### (Failure to Indemnify)

27. Plaintiff, on her own behalf and all Class Members, re-alleges and incorporates herein by reference all paragraphs outside this section as though fully set forth herein as it applies to Defendants.

28. Throughout her employment and during the applicable PAGA period as it pertains to other aggrieved employees, Defendants failed to indemnify Plaintiff and other aggrieved employees for personal expenditures including but not limited to use of her/their personal vehicle(s), cell phone(s), home office(s), personal computer(s), office supplies, printers, printing cartridges, etc., and payment for referral services as described in detail in the GENERAL ALLEGATIONS section of this complaint which benefitted Defendants and for which Defendants failed to indemnify the ISRs. Pursuant to California Labor Code § 2802, an

employer shall indemnify its' employees for all necessary expenditures incurred by the employee in direct consequence of the discharge of her duties plus attorney fees.

29. In addition to attorney fees, pursuant to section 2802 (c), Defendants are also required to pay interest which "shall accrue from the date on which the employee incurred the necessary expenditure or loss".

## THIRD CAUSE OF ACTION

### (Failure to Pay Wages Including Minimum Wages)

30. Plaintiff, individually and on behalf of all Class Members, re-alleges and incorporates herein by reference all paragraphs outside this section as though fully set forth herein as it applies to Defendants.

31. Plaintiff was a non-exempt employee (as were all ISRs) and therefore, was entitled to receive at least minimum wage for every hour and/or pay period during which she and other aggrieved employees worked for Defendants as non-exempt employee but Defendants failed to pay her as such. Defendants required ISRs to work certain hours for which they received no compensation including but not limited to required training sessions, floor hours, office meetings, etc.

32. Pursuant to Labor Code § 200, "wages" includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation. Under California state law through the Minimum Wage Order MW-2007, Labor Code section 1182.12 and local ordinances, every employer shall pay to each and every employee wages not less than $8.00 per hour beginning January 1, 2008 up to July 1, 2014, not less than $9.00 per hour beginning July 1, 2014, not less than $10.00 per hour beginning January 1, 2016, and not less than $10.50 per hour for San Diego, California businesses beginning on July 11, 2016, and 11.50 per hour in the City of San Diego effective January 1, 2017, pursuant to San Diego Municipal Code section 39.0107. Defendants also failed to pay ISRs bonuses as promised. In addition, the ISRs are entitled to receive at least minimum wages for all nonproductive time separate from any piece rate compensation, pursuant to Labor Code section 226.2.

11
**CLASS ACTION COMPLAINT**

33.     Labor Code Section 1197.1 specifically states, in part as follows: "Any employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an order of the commission shall be subject to a civil penalty and restitution of wages payable to the employee." Defendants failed to pay Plaintiff at least minimum wage for all hours worked and also failed to pay wages for some of the hours worked. Thus, Defendants were required by law to pay Plaintiff at least the applicable minimum wage for each pay period worked but instead paid Plaintiff nothing for some hours which Plaintiff worked.

34.     Accordingly, Plaintiff is entitled to recover the difference between the required minimum wage multiplied times two for all hours worked pursuant to Labor Code § 1194.2 as liquidated damages, plus interest pursuant to Labor Code §§ 1194, 1194.2, and Civil Code § 3289 from the date payment was due pursuant to Labor Code § 204, attorneys' fees, expenses, and costs of suit pursuant to Labor Code §§ 1194, 1194.3 (to enforce a judgment) and penalties pursuant to California Labor Code Section 1197.1.

### FOURTH CAUSE OF ACTION

**(Waiting Time Penalties Per Labor Code Section 203)**

35.     Plaintiff re-alleges and incorporates herein by reference all paragraphs outside this section as though fully set forth herein as it applies to Defendants on her own behalf and all Class Members.

36.     Pursuant to Labor Code §201, Plaintiff and all formerly employed ISRs, as Sub-Class Members, who were involuntary separated were entitled to receive all unpaid wages at the time of said separation. Pursuant to Labor Code §202, Plaintiff and all formerly employed ISRS, as a subclass, were entitled to all wages earned and unpaid within 72 hours of separation from employment.

37.     Defendants failed to pay the formerly employed ISRs all wages and sums owed within in accordance with Labor Code §§201 and 202. Consequently, Defendants willful failure to pay said ISRs, requires Defendants to pay the daily wages of said ISRs as a continuing

---

12
**CLASS ACTION COMPLAINT**

penalty up to 30 days.

38. Therefore, pursuant to Labor Code §203, Plaintiff and all ISRs are entitled to receive up to 30 days of wages which Defendants intentionally and willfully failed to pay despite the clear warnings and admonitions by their very own Human Resources department.

## FIFTH CAUSE OF ACTION

### (Time Record Violations)

39. Plaintiff re-alleges and incorporates herein by reference all paragraphs outside this section as though fully set forth herein as it applies to Defendants on her own behalf and all Class Members.

40. Defendants failed to provide Plaintiff and ISRs with proper pay-stubs. This failure was in clear violation of California Labor code sections 226 and 226.3 Labor Code § 226 states in part, that, "[e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing . . . gross wages earned . . . total hours worked by the employee,... the name and address of the legal entity that is the employer [and] the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis", among other items.

41. Labor Code § 226 (e) (1) states as follows: "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

42. The civil penalties provided for in this section are in addition to any other penalty provided by law." California Labor Code section 226.3, states in pertinent part as follows: "Any employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an

1  initial citation and one thousand dollars ($1,000) per employee for each violation in a
2  subsequent citation, for which the employer fails to provide the employee a wage deduction
3  statement or fails to keep the records required in subdivision (a) of Section 226. The civil
4  penalties provided for in this section are in addition to any other penalty provided by law."

43. Defendants failed to comply with Labor Code §§226 and 226.3. Accordingly, Defendants are liable pursuant to Labor Code § 226 which states that "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." California Labor Code section 226.3, states in pertinent part as follows: "Any employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226. The civil penalties provided for in this section are in addition to any other penalty provided by law." Furthermore, Labor Code section 2751 states that "[w]henever an employer enters into a contract of employment with an employee for services to be rendered within this state and the contemplated method of payment of the employee involves commissions, the contract shall be in writing and shall set forth the method by which the commissions shall be computed and paid."

### SIXTH CAUSE OF ACTION

**(Failure to Maintain Time Records)**

44. Plaintiff re-alleges and incorporates herein by reference all paragraphs outside this section as though fully set forth herein as it applies to Defendants on her own behalf and all Class Members.

45. Pursuant to Labor Code § 1174(d), Defendants have a legal obligation to

"[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments."

46. Said Defendants failed to maintain records of Plaintiff's and other ISR's hours worked which Defendants were required to keep pursuant to Labor Code § 1174(d). Therefore, Defendants violated Labor Code § 1174(d) by failing to collect and keep records indicating the daily hours worked by Plaintiff and other aggrieved employees.

47. Pursuant to Labor Code § 1174.5, "any person employing labor who willfully fails to maintain . . . accurate and complete records required by subdivision (d) of Section 1174 . . . shall be subject to a civil penalty of five hundred dollars ($500)." Accordingly, Entity Defendants are required to pay Plaintiff and other Class Members an additional $500 per individual along with consequential damages.

## SEVENTH CAUSE OF ACTION

**(Unfair Business Practices Under Business and Professions Code section 17200)**

48. Plaintiff re-alleges and incorporates herein by reference all paragraphs outside this section as though fully set forth herein as it applies to Defendants on her own behalf and all Class Members.

49. In addition to the statutes cited throughout this Complaint, Defendants also violated various Labor Code sections, including, but not limited to, Labor Code sections 215, 216, 223, 222, 225, and 226.6, 226.8, 233, 1194.2.

50. Defendants' actions alleged above and throughout this Complaint constitute unfair business practices in violation of California Business and Professions Code sections 17200, et seq., because they were done repeatedly over a significant period of time, and in a systemic manner to the detriment of Plaintiff and others similarly situated.

51. As a result, Plaintiff, and others similarly situated, have suffered damages and requests damages and/or restitution of all monies and further requests that profits be disgorged from Defendants in an amount according to proof at time of trial, but in an amount believed to

be in excess of the minimal jurisdictional requirements of this Court.

52. Pursuant to California Business & Professions Code section 17203, Plaintiff requests that this Court order Defendants to disgorge all ill-gotten gains and award Plaintiff, and others similarly situated, full restitution of all monies wrongfully acquired by Defendants by such "unfair" business act and practices as outlined herein above, plus interest and attorneys' fees pursuant to California Code of Civil Procedure section 1021.5. Plaintiff additionally requests that such funds be impounded by the Court or that an asset freeze or constructive trust be imposed upon such revenues and profits to avoid dissipation and/or fraudulent transfers or concealment of such monies by Defendants. Plaintiff, and others similarly situated, may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

53. Pursuant to California Business & Professions Code section 17203, Plaintiff further seeks an order of this Court for equitable and/or injunctive relief in the form of requiring Defendants to correct the unfair business acts and practices referenced herein.

54. Plaintiff reserves the right to allege other violations of law which constitute unlawful acts or practices.

## EIGHTH CAUSE OF ACTION
### (Failure to Provide Sick Leave)

55. Plaintiff re-alleges and incorporates herein by reference all paragraphs outside this section as though fully set forth herein as it applies to Defendants on her own behalf and all Class Members.

56. California Labor Code section 246 requires Defendants to provide all employees "who, on or after July 1, 2015, works in California for the same employer for 30 or more days within a year from the commencement of employment is entitled to paid sick days as specified in this section."

57. Pursuant to Labor Code section 233, any employer who violates the section 246, "shall be entitled to reinstatement and actual damages or one day's pay", and the "award of reasonable attorney fees", "if the employee prevails." Subsection (f) states: "The rights and

remedies specified in this section are cumulative and nonexclusive and are in addition to any other rights or remedies afforded by contract or under other law."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, prays for judgment against Defendants, as follows:

1. For compensatory damages, including but not limited to unpaid wages, overtime pay, liquidated damages, economic damages, non-economic damages and premiums according to proof;

2. For penalties, liquidated damages and compensation pursuant to Labor Code §§ 201, 202, 203, 226, 226.3, 226.8, 227, 233, 551, 552, 553, 1174, 1174.5, 1194, 1194.2, 1197.1, and 1197. 5;

3. For interest pursuant to all applicable statues including but not limited to, Labor Code §§ 218.6, 204 and Civil Code § 3289;

4. For all damages available pursuant to all applicable section of the Labor Code;

5. For restitution and/or disgorgement pursuant to Business & Professions Code §§ 17200, et. seq. and 1197.1;

6. For reasonable attorneys' fees and costs pursuant to all applicable statutes, including but not limited to, Labor Code §§ 218.5, 226, 233, 1194, 1194.2, 2802;

7. For such other and further relief as the Court deems proper.

Respectfully Submitted By:

LAW OFFICES OF THOMAS M. DIACHENKO, APC

Dated: 8/28/2017

Thomas M. Diachenko, Esq.
Attorney for Plaintiff, JANDY QUISMUNDO